JOHN L. BURRIS, Esq., SBN 69888
BEN NISENBAUM, Esq., SBN 250055
MELISSA C. NOLD, Esq., SBN
PATRICK M. BUELNA, Esq., SBN 317043
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
BNisenbaum@gmail.com
Melissa.Nold@johnburrislaw.com
Patrick.Buelna@johnburrislaw.com

Attorneys for Plaintiffs

**FILED**

JUL - 9 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN HERNANDEZ, et al.

                Plaintiffs,

    vs.

CITY OF SACRAMENTO, et al.

          Defendants.

Case No. 2:17-cv-02311-JAM-DB

**AMENDED PETITION APPOINTING GUARDIAN AD LITEM AND APPROVING SETTLEMENT AND ORDER**

Courtroom 6, 14th Floor

Hon. John A. Mendez

Petitioner HERB THOMAS respectfully represents:

    1.    I am a California Licensed Professional Fiduciary and Registered Guardian. I own and operate Herb Thomas and Associates, Fiduciary Services, which I founded in 2004. I have extensive experience in financial planning, insurance and fiduciary responsibility. My Curricula Vitae, attached as Exhibit A hereto, accurately summarizes my experience, education, and licensing. I have worked extensively in assisting clients navigating the complexities of personal finance and public benefits. I have extensive experience in particular working with plaintiffs whose recoveries in

civil lawsuits may potentially impact public benefits they receive. To that end, pursuant to my qualifications, I provide services as the trustee of special needs trusts on behalf of Plaintiffs like John Hernandez, who receive public benefits. I also act as a Guardian Ad Litem pursuant to my qualifications where a plaintiff is disabled and lacks competency to make their own legal decisions. In some cases, I have been both the Guardian Ad Litem and the trustee of special needs trusts for the same plaintiff.

2.     I have also recommended Dale Law Firm (a firm that specialize in estates and trusts) whose attorneys prepared a special needs trust titled the John Hernandez Special Needs Trust and is attached as **Exhibit C**.

3.     I became involved in this matter at the request of Plaintiff John Hernandez's attorneys, John Burris, Ben Nisenbaum, Melissa Nold and Patrick Buelna. I have become familiar with the facts of Mr. Hernandez's case, as well as his well-documented disability. I have also reviewed the settlement offered in this action to Mr. Hernandez, the monetary component of which is a $5,000,000.00 payment from the City of Sacramento. Should supplemental medical or psychiatric care be necessary for Mr. Hernandez, I would act as trustee for a special needs trust for Mr. Hernandez to provide for such supplemental care.

4.     Mr. Hernandez alleges causes of action against the named defendants herein for violations of his Fourth Amendment Rights under Federal and California law.

5.     Plaintiffs' causes of action arise out an incident which occurred on March 6, 2017, in which Defendants officers beat, tased and asphyxiated Mr. Hernandez, resulting in serious injuries.

6.     No previous petition for appointment of guardian ad litem has been filed in this matter.

7.     I am willing to serve as Mr. Hernandez's Guardian Ad Litem. I am fully competent to understand and protect the rights of Mr. Hernandez and have no interest adverse to that of Hernandez.

8.     I request that I be appointed guardian ad litem for Mr. Hernandez, as denoted above, to prosecute the above-described causes of action on behalf of Mr. Hernandez, as denoted above, and for such other relief as the Court may deem just and proper.

9.   I am aware that John Hernandez, John Hernandez's biological mother and caretaker, as well as his separated wife, Jennifer Hernandez, approve of the proposed settlement and special needs trust.

10.   The proposed settlement of the case has a global settlement of $5,200,000.00 to be paid by the City of Sacramento to satisfy Mr. Hernandez and his daughter, H.E.'s claims for injury and all costs and attorneys' fees, and other non-monetary provisions described above in paragraph 2. The parties, H.E. and John Hernandez, have agreed to apportion $5,000,000 for John Hernandez's injuries and future medical costs, and $200,000 for H.E.'s loss of her familial relationship to her father, John Hernandez  The settlement shall be paid as follows:

a.   Attorney fees for Mr. Hernandez shall be 45% of her total gross recovery, in the amount of $2,250,000.00, pursuant to the contingency fee agreement in this case. In addition, Plaintiff's counsel shall recover the litigation costs advanced in advancing Mr. Hernandez's case.  The fees and costs include all attorney's fees and costs incurred by Plaintiff's instant counsel, the Law Offices of John L. Burris.

b.   Plaintiffs' counsel shall recover litigation costs advanced in prosecuting this action as set forth: Total amount of litigation costs = $218,124.84

c. Furthermore, attorneys' fees for preparation of the John Hernandez Special Needs Trust be paid to the Dale Law Firm in the amount of $3,000.

d. After reduction of attorneys fees from the Law Offices of John Burris, Dale Law Firm and the litigation costs, Mr. Hernandez's net recovery is in the amount of $2,528,875.16.

e.   From Mr. Hernandez's net settlement, $1,250,000.00 shall be placed in a structured settlement as set forth in confidential, sealed Exhibit B attached hereto, which will be disbursed into a special needs trust for John Hernandez. The settlement shall be disbursed into the special needs trust according to the terms of the structured settlement proposal #2, subject to annuity rates at the time of purchase.

f. The remaining $1,278,875.16 of Mr. Hernandez's recovery shall be placed directly in the special needs trust, and all payments from the structured settlement shall be paid into the special needs trust.  The special needs trust shall be created for John Hernandez titled

"John Hernandez Special Needs Trust" (attached hereto as Exhibit C) and managed by Guardian ad Litem Herb Thomas. There shall be a bond for the Trustee be set in the amount of $1,450,000.

g. I will administer the special needs trust as Trustee. I will file accounts and reports for Court approval in the manner and frequency required by the California Probate Code. Venue for all future proceedings concerning the special needs trust be the Alameda County Superior Court.

10. This petition was prepared by the Law Offices of John L. Burris, the lead counsel representing plaintiff in this action. Benjamin Nisenbaum, Esq. of Law Offices of John L. Burris also represents plaintiff and is in agreement with the terms of this Petition. John L. Burris, Esq. and Benjamin Nisenbaum, Esq. hereby represent to the Court that they became involved in this case at the request of plaintiff, and have not received, and do not expect to receive any compensation for their services in connection with this action from any person other than the parties whom they represent in this action. The Counsels of Record for Plaintiff have reviewed and recommend this settlement and appointment as well.

11. Petitioner and his counsel have made a careful and diligent inquiry and investigation to ascertain the facts relating to the subject incidents, the responsibility therefore, and the nature and extent of injury to Mr. Hernandez, and fully understand that if the compromise herein proposed is approved by the Court and is consummated, Mr. Hernandez will be forever barred and prevented from seeking any further recovery of compensation as against all Defendants in this action, even if her losses and injuries might in the future prove to be more serious than they are now thought to be.

12. Petitioner recommends this compromise settlement to the Court as being fair, reasonable, and in the best interests of said incompetent plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2019

Herb Thomas

Petition to Appoint Guardian Ad Litem and Approve Settlement.

# ORDER

Plaintiffs Petition to Appoint HERB THOMAS as the guardian ad litem of JOHN HERNANDEZ, in the instant matter is hereby GRANTED.

The Court hereby approves the settlement according to the terms set forth in the instant petition to approve the settlement of Plaintiff's claims including the following orders:

1. That Payors will issue checks in the total amount of $5,200,000.00 (Five Million Dollars, Two Hundred Thousand and Zero Cents) to settle the claims of the Plaintiff John Hernandez and H.E..

2. That Plaintiff John Hernandez will receive an apportionment of $5,000,000 of the total settlement consistent with the parties' agreement between themselves.

3. Attorneys' fees for litigation ($2,250,000) and litigations costs ($218.124.84) be paid to the Law Offices of John Burris in the total amount of $2,468,124.84.

4. Attorneys' fees for preparation of the John Hernandez Special Needs Trust be paid to the Dale Law Firm in the amount of $3,000.

5. That of John Hernandez's remaining net recovery of $2,528,875.16, there should be $1,250,000 million placed in a structured settlement that should be disbursed into the John Hernandez Special Needs Trust, a special needs trust, as set forth in Exhibit C.

6. That the Guardian Ad Litem Herb Thomas is directed to establish the John Hernandez Special Needs Trust as set forth in Exhibit C.

7. That the remaining $1,278,875.16 of John Hernandez's shall be placed in the John Hernandez Special Needs Trust with Guardian Ad Litem Herb Thomas appointed as Trustee.

8. That Bond for the Trustee be set in the amount of $1,450,000

9. The Trustee file accounts and reports for Court approval in the manner and frequency required by the California Probate Code

10. Venue for all future proceedings concerning the special needs trust be the Alameda County Superior Court.

IT IS SO ORDERED.

Dated: July 9, 2019

Hon. John A. Mendez
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## Professional Vitae

Herb Thomas, CLPF #86

875-A Island Drive, #387, Alameda, CA 94502-6768

(510) 749-8358    herb@herbthomas.com,    www.herbthomas.com

Before starting Herb Thomas and Associates, Fiduciary Services, I served as the developer and coordinator of the Kaiser Permanente (KP), East Bay Community Benefits Advocacy program. The goal of this program was to find innovative methods to subsidize KP's members' health care costs through the complex webs of public and employee benefits (e.g., Medi-Cal, COBRA, HIPPA, etc.). Through this position, I also functioned as the key benefits liaison/educator between KP - and Federal, State, County, and private agencies on public insurance /benefits issues. Due to the success of the program, which saved Kaiser Permanente hundreds of thousands of dollars per year, I directed other Northern Kaiser Permanente service areas in implementing a copy of his program in their service areas.

Through my work for Kaiser Permanente, I realized the need for understanding the financial position of clients so I returned to the classroom to earn certificates in financial planning, insurance, and fiduciary responsibility. As a private fiduciary with an expert knowledge of public benefits, I started Herb Thomas and Associates Fiduciary Services in 2004. Since its inception I have served numerous attorneys, private clients, and financial planners as an entity who understands the interaction of personal finances and public benefits.

Additionally, previously to my work in public benefits I served seven years as taxpayer delinquency investigator with the Internal Revenue Service. In this position I located taxpayers who had not filed federal income tax returns and assisted them with becoming compliant with federal regulations.

## Education

- Certificate in Professional Fiduciary Management for Conservators, California State University, Fullerton, Spring 2003.

- Certificate in Professional Fiduciary Management for Trustees, California State University, Fullerton, Spring 2003.

- Bachelors of Science, Health Sciences, San Francisco State University, Spring 1999.

- Recipient: Woodrow Wilson Program in Public Policy and International Affairs Fellowship, Princeton University, Summer 1996.

## Professional Skills

- Fiduciary training in investment strategies (e.g., asset allocation, diversity, retirement funds, real estate, and business investments, etc.).

- Expert knowledge of public and private benefits/entitlement programs (e.g., Medi-Cal, Social Security, State Disability, Medicare, HIPPA, etc.).

- Ability to analyze and present medical, financial, and historical information that builds, supports, or defends clients' disability claims.

- Excellent interpersonal, negotiation, and communication skills.

- Persuasive public speaker and trainer. Insightful and process oriented facilitator.

## Licenses and Certification

- California Licensed Professional Fiduciary, #86
- Registered Guardian

## Professional Memberships

- American Society on Aging
- Financial Planning Association
- Professional Fiduciary Association of California
- National Guardianship Foundation
- National Organization of Social Security Claimants' Representatives

## Community Service

- San Francisco Suicide Prevention
- East Bay Self Sufficiency Program
- Board Member of Legal Assistance for Seniors

## EMPLOYMENT HISTORY

| | |
|---|---|
| Benefits Coordinator | Kaiser Permanente, East Bay Customer Service Area 1999- 2005 |
| Tax Examiner | Internal Revenue Service 1988 - 1995 |

# EXHIBIT A

# Robert W. Johnson & Associates

FORENSIC ECONOMISTS

May 29, 2019

Mr. Ben Nisenbaum
Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, CA 94621

Re: John Hernandez Structured Settlement Proposals

Dear Mr. Nisenbaum:

I would like to congratulate you and Mr. Burris on settling the John Hernandez matter.

Pursuant to your request, please find attached the **preliminary** structured settlement Proposals for Mr. Hernandez.

The Proposals consist of the following payouts:

- Lifetime monthly payments with a 30-year guarantee
- Lifetime monthly payments with a 30-year guarantee and 3% COLA

I am using Metropolitan Life (A.M. Best rating of A+/XV) for these Proposals. The Proposals uses a purchase date of August 1, 2019 and a premium cost of $1,250,000. I am also including the tax equivalent yield assuming a 28% tax bracket.

Please see Proposals below:

|  | | Guaranteed Payout | Expected Payout |
|---|---|---|---|
| **Proposal I: Life & 30 Years** | | | |
| $4,461.98 payable monthly for life, guaranteed for 30 years beginning 9/1/2019, with the last guaranteed payment on 8/1/2049. | | $1,606,313 | $2,360,387 |
| | **Totals** | **$1,606,313** | **$2,360,387** |

Internal Rate of Return: 3.32%
Tax Equivalent Yield: 4.61%

Re: John Hernandez Structured Settlement Proposals
Page 2 of 3

|  | Guaranteed Payout | Expected Payout |
|---|---|---|
| **Proposal II: Life & 30 Years & 3% COLA**<br>$2,548.06 payable monthly for life, guaranteed<br>for 30 years beginning 9/1/2019, increasing at<br>a rate of 3.0% compounded annually, with the last<br>guaranteed payment on 8/1/2049. | $1,454,700 | $2,732,163 |
| **Totals** | **$1,454,700** | **$2,732,163** |

Internal Rate of Return: 3.28%
Tax Equivalent Yield: 4.56%

A structured settlement provides a unique opportunity to receive an award and any interest earned **tax-free**. They also can provide the following benefits:

- Unlimited payment options
- Lifetime payments
- Guaranteed payment option
- Avoids dissipation
- No ongoing management fees
- Judgment proof
- Insurance carriers with financial strength ratings of A+ or better
- Insurance carriers with 50 to 150 years of investment experience

Please note that these are **preliminary** proposals to hopefully give you an idea for budgeting purposes. Once you have an idea on the direction you would like to take, I will perform a full market survey using Mr. Hernandez's rated ages. This allows the carriers to compete for your business and hopefully can enhance your payouts.

Structured settlements are subject to changes in financial markets. This analysis shows the cost of your settlement on 5/29/2019. Structured settlement quotes are often good for 5 to 10 days, even though they cannot be guaranteed until they are locked in. Please feel free to contact me with any questions or if you would like to see additional proposals. Thank you.

Re: John Hernandez Structured Settlement Proposals
Page 3 of 3

Sincerely,

*H. Lleverino/TM*

Horacio Lleverino
*CA Insurance License No. 0C04363*

 **MetLife**

Settlement Planners, Inc.

4984 El Camino Real, Suite 210
Los Altos, California 94022
(650)494-2413

# Settlement Proposal for:  John Hernandez (Life & 30)

| | |
|---|---|
| Owner State : | Delaware  (0.00% tax) |
| Rate Series: | RB190401 |
| Rates Effective: | 04/01/2019 |
| Case Type: | Assigned |

| | |
|---|---|
| Quote Date: | 05/29/2019 |
| Purchase Date: | 08/01/2019 |
| Expiration Date: | 06/05/2019 |

| **For : John Hernandez** | | | Male, Date of Birth: 02/10/1983, Age: 36 |
|---|---|---|---|
| **Benefit Description** | **Guaranteed Benefit** | **Expected Benefit** | **Cost** |
| Life with Certain Period Annuity - $4,461.98 for life, payable monthly, guaranteed for 30 year(s), beginning on 09/01/2019, with the last guaranteed payment on 08/01/2049. | $1,606,312.80 | $2,360,387.42 | $1,249,250.00 |
| **Subtotal For:  John Hernandez** ................................................... | **$1,606,312.80** | **$2,360,387.42** | **$1,249,250.00** |

| SUMMARY INFORMATION | | | | |
|---|---|---|---|---|
| | **Guaranteed Benefit** | **Expected Benefit** | **Cost** | **IRR** |
| **ANNUITY COST**........................................................................ | | | **$1,249,250.00** | |
| Assignment Fee ................................................................... | | | $750.00 | |
| **TOTAL ANNUITY COST W/ FEES** ...................................... | **$1,606,313** | **$2,360,387** | **$1,250,000.00** | **3.32%** |
| Case IRR 3.32% | | | | |

*The life expectancy used for this quote assumes an average life expectancy for all persons of the age illustrated. The life expectancy is based on standard actuarial assumptions.*

 **MetLife**

**Settlement Planners, Inc.**

4984 El Camino Real, Suite 210
Los Altos, California 94022
(650)494-2413

# Settlement Proposal for:  John Hernandez (Life & 30 & 3%)

| | | | |
|---|---|---|---|
| Owner State : | Delaware  (0.00% tax) | Quote Date: | 05/29/2019 |
| Rate Series: | RB190401 | Purchase Date: | 08/01/2019 |
| Rates Effective: | 04/01/2019 | Expiration Date: | 06/05/2019 |
| Case Type: | Assigned | | |

| **For : John Hernandez** | | | **Male, Date of Birth: 02/10/1983, Age: 36** |
|---|---|---|---|
| **Benefit Description** | **Guaranteed Benefit** | **Expected Benefit** | **Cost** |
| Life with Certain Period Annuity - $2,548.06 for life, payable monthly, guaranteed for 30 year(s),  beginning on 09/01/2019, increasing at a rate of 3.00% compounded annually, with the last guaranteed payment on 08/01/2049. | $1,454,700.00 | $2,732,163.12 | $1,249,250.00 |
| **Subtotal For:  John Hernandez** ................................ | **$1,454,700.00** | **$2,732,163.12** | **$1,249,250.00** |

| SUMMARY INFORMATION | | | | |
|---|---|---|---|---|
| | **Guaranteed Benefit** | **Expected Benefit** | **Cost** | **IRR** |
| ANNUITY COST............................................................ | | | **$1,249,250.00** | |
| Assignment Fee ........................................................ | | | $750.00 | |
| TOTAL ANNUITY COST W/ FEES ...................................... | **$1,454,700** | **$2,732,163** | **$1,250,000.00** | **3.28%** |
| Case IRR 3.28% | | | | |

*The life expectancy used for this quote assumes an average life expectancy for all persons of the age illustrated.  The life expectancy is based on standard actuarial assumptions.*

*This quote is pre-approved by MetLife even though the normal guidelines are not satisfied.*



**MetLife**

Settlement Planners, Inc.

4984 El Camino Real, Suite 210
Los Altos, California 94022
(650)494-2413

## Annual Summary of Benefits for:
## John Hernandez

| Owner State : | Delaware  (0.00% tax) |
| Rate Series: | RB190401 |
| Rates Effective: | 04/01/2019 |
| Case Type: | Assigned |

| Quote Date: | 05/29/2019 |
| Purchase Date: | 08/01/2019 |
| Expiration Date: | 06/05/2019 |

| Period Beginning | Period End | Age @ Beg. Yr. | Guaranteed Benefit | Benefit Paid If Alive | Total Benefit For Period | Cumulative Benefit |
|---|---|---|---|---|---|---|
| 09/01/2019 | 08/31/2020 | 37 | $30,576.72 | $0.00 | $30,576.72 | $30,576.72 |
| 09/01/2020 | 08/31/2021 | 38 | 31,494.00 | 0.00 | 31,494.00 | 62,070.72 |
| 09/01/2021 | 08/31/2022 | 39 | 32,438.88 | 0.00 | 32,438.88 | 94,509.60 |
| 09/01/2022 | 08/31/2023 | 40 | 33,411.96 | 0.00 | 33,411.96 | 127,921.56 |
| 09/01/2023 | 08/31/2024 | 41 | 34,414.32 | 0.00 | 34,414.32 | 162,335.88 |
| 09/01/2024 | 08/31/2025 | 42 | 35,446.80 | 0.00 | 35,446.80 | 197,782.68 |
| 09/01/2025 | 08/31/2026 | 43 | 36,510.24 | 0.00 | 36,510.24 | 234,292.92 |
| 09/01/2026 | 08/31/2027 | 44 | 37,605.48 | 0.00 | 37,605.48 | 271,898.40 |
| 09/01/2027 | 08/31/2028 | 45 | 38,733.72 | 0.00 | 38,733.72 | 310,632.12 |
| 09/01/2028 | 08/31/2029 | 46 | 39,895.68 | 0.00 | 39,895.68 | 350,527.80 |
| 09/01/2029 | 08/31/2030 | 47 | 41,092.56 | 0.00 | 41,092.56 | 391,620.36 |
| 09/01/2030 | 08/31/2031 | 48 | 42,325.32 | 0.00 | 42,325.32 | 433,945.68 |
| 09/01/2031 | 08/31/2032 | 49 | 43,595.04 | 0.00 | 43,595.04 | 477,540.72 |
| 09/01/2032 | 08/31/2033 | 50 | 44,902.92 | 0.00 | 44,902.92 | 522,443.64 |
| 09/01/2033 | 08/31/2034 | 51 | 46,250.04 | 0.00 | 46,250.04 | 568,693.68 |
| 09/01/2034 | 08/31/2035 | 52 | 47,637.48 | 0.00 | 47,637.48 | 616,331.16 |
| 09/01/2035 | 08/31/2036 | 53 | 49,066.68 | 0.00 | 49,066.68 | 665,397.84 |
| 09/01/2036 | 08/31/2037 | 54 | 50,538.60 | 0.00 | 50,538.60 | 715,936.44 |
| 09/01/2037 | 08/31/2038 | 55 | 52,054.80 | 0.00 | 52,054.80 | 767,991.24 |
| 09/01/2038 | 08/31/2039 | 56 | 53,616.48 | 0.00 | 53,616.48 | 821,607.72 |
| 09/01/2039 | 08/31/2040 | 57 | 55,224.96 | 0.00 | 55,224.96 | 876,832.68 |
| 09/01/2040 | 08/31/2041 | 58 | 56,881.68 | 0.00 | 56,881.68 | 933,714.36 |
| 09/01/2041 | 08/31/2042 | 59 | 58,588.20 | 0.00 | 58,588.20 | 992,302.56 |
| 09/01/2042 | 08/31/2043 | 60 | 60,345.84 | 0.00 | 60,345.84 | 1,052,648.40 |
| 09/01/2043 | 08/31/2044 | 61 | 62,156.16 | 0.00 | 62,156.16 | 1,114,804.56 |
| 09/01/2044 | 08/31/2045 | 62 | 64,020.84 | 0.00 | 64,020.84 | 1,178,825.40 |
| 09/01/2045 | 08/31/2046 | 63 | 65,941.44 | 0.00 | 65,941.44 | 1,244,766.84 |
| 09/01/2046 | 08/31/2047 | 64 | 67,919.76 | 0.00 | 67,919.76 | 1,312,686.60 |
| 09/01/2047 | 08/31/2048 | 65 | 69,957.36 | 0.00 | 69,957.36 | 1,382,643.96 |
| 09/01/2048 | 08/31/2049 | 66 | 72,056.04 | 0.00 | 72,056.04 | 1,454,700.00 |

# Proposal II

*The life expectancy used for this quote assumes an average life expectancy for all persons of the age illustrated.  The life expectancy is based on standard actuarial assumptions.*

Quote ID:  John Hernandez (Life & 30 & 3%)
Prepared by:  Horacio Lleverino

May 29, 2019
Page 1 of 2

Settlement Planners, Inc.
MetLife Version v10.00/r10.00



**MetLife**

**Settlement Planners, Inc.**

4984 El Camino Real, Suite 210
Los Altos, California 94022
(650)494-2413

## Annual Summary of Benefits for:
## John Hernandez

| | | | | | | |
|---|---|---|---|---|---|---|
| Owner State : | Delaware (0.00% tax) | | | Quote Date: | 05/29/2019 |
| Rate Series: | RB190401 | | | Purchase Date: | 08/01/2019 |
| Rates Effective: | 04/01/2019 | | | Expiration Date: | 06/05/2019 |
| Case Type: | Assigned | | | | |

| Period Beginning | Period End | Age @ Beg. Yr. | Guaranteed Benefit | Benefit Paid If Alive | Total Benefit For Period | Cumulative Benefit |
|---|---|---|---|---|---|---|
| 09/01/2049 | 08/31/2050 | 67 | 0.00 | 74,217.72 | 74,217.72 | 1,528,917.72 |
| 09/01/2050 | 08/31/2051 | 68 | 0.00 | 76,444.20 | 76,444.20 | 1,605,361.92 |
| 09/01/2051 | 08/31/2052 | 69 | 0.00 | 78,737.64 | 78,737.64 | 1,684,099.56 |
| 09/01/2052 | 08/31/2053 | 70 | 0.00 | 81,099.72 | 81,099.72 | 1,765,199.28 |
| 09/01/2053 | 08/31/2054 | 71 | 0.00 | 83,532.72 | 83,532.72 | 1,848,732.00 |
| 09/01/2054 | 08/31/2055 | 72 | 0.00 | 86,038.68 | 86,038.68 | 1,934,770.68 |
| 09/01/2055 | 08/31/2056 | 73 | 0.00 | 88,619.88 | 88,619.88 | 2,023,390.56 |
| 09/01/2056 | 08/31/2057 | 74 | 0.00 | 91,278.48 | 91,278.48 | 2,114,669.04 |
| 09/01/2057 | 08/31/2058 | 75 | 0.00 | 94,016.76 | 94,016.76 | 2,208,685.80 |
| 09/01/2058 | 08/31/2059 | 76 | 0.00 | 96,837.24 | 96,837.24 | 2,305,523.04 |
| 09/01/2059 | 08/31/2060 | 77 | 0.00 | 99,742.44 | 99,742.44 | 2,405,265.48 |
| 09/01/2060 | 08/31/2061 | 78 | 0.00 | 102,734.64 | 102,734.64 | 2,508,000.12 |
| 09/01/2061 | 08/31/2062 | 79 | 0.00 | 105,816.72 | 105,816.72 | 2,613,816.84 |
| 09/01/2062 | 08/31/2063 | 80 | 0.00 | 108,991.20 | 108,991.20 | 2,722,808.04 |
| 09/01/2063 | 08/31/2064 | 81 | 0.00 | 9,355.08 | 9,355.08 | 2,732,163.12 |
| | **Subtotals:** | | **$1,454,700.00** | **$1,277,463.12** | **$2,732,163.12** | |

*The life expectancy used for this quote assumes an average life expectancy for all persons of the age illustrated. The life expectancy is based on standard actuarial assumptions.*

# EXHIBIT C

# JOHN HERNANDEZ SPECIAL NEEDS TRUST

**_____, 2019**

LAW OFFICES
## THE DALE LAW FIRM, P.C.
127 ASPEN DRIVE, SUITE 100
PACHECO, CALIFORNIA 94553
(925) 826-5585

# John Hernandez Special Needs Trust
# Table of Contents

**Article One**   **Establishing the John Hernandez Special
Needs Trust**................................................................**1**

Section 1.01  Identifying the Trust ................................................1
Section 1.02  An Irrevocable Trust................................................1
Section 1.03  Transfers to the John Hernandez Special Needs Trust ..............1
Section 1.04  Statement of Trustmaker's Intent................................2


**Article Two**   **Distributions During John's Lifetime**............................**2**

Section 2.01  Distributions of Income and Principal ........................2
Section 2.02  Maximize Benefits................................................3
Section 2.03  Duty to Supplement and Not Supplant Government
Benefits ................................................3
Section 2.04  No Court Invasion of Income or Principal................3
Section 2.05  Discretionary Distributions ........................................3
Section 2.06  Administrative Expenses ..........................................4


**Article Three**  **Early Termination Provisions**........................................**4**

Section 3.01  Definition of Early Termination ................................4
Section 3.02  Early Termination if Eligibility Terminates ...............4
Section 3.03  Early Termination if Insufficient Assets....................5
Section 3.04  Disposition of Trust Assets Upon Early Termination................5
Section 3.05  Allowable Administrative Expenses Paid from the Trust..........5
Section 3.06  Savings Clause ........................................................5


**Article Four**   **Administration of the John Hernandez Special
Needs Trust Upon John's Death**....................................**6**

Section 4.01  Allowable Administrative Expenses..........................6
Section 4.02  Reimbursement to State ............................................6
Section 4.03  Payment of Expenses and Taxes................................7
Section 4.04  Distribution of Remaining Trust Property ..................7


**Article Five**   **Powers and Duties of Trustee**........................................**7**

Section 5.01  Investment Powers..................................................7
Section 5.02  Power to Seek Assistance and Retain Advisors.........7
Section 5.03  Power to Retain Services Provided by Professionals ...............8
Section 5.04  Duty to Account and Report ....................................8
Section 5.05  Duty to Make Records Available................................9

i

**Article Six**     **Trustee Provisions** .......................................................... **9**

Section 6.01     Appointment and Replacement of Trustees ...............................9
Section 6.02     Resignation of Trustees ..............................................................9
Section 6.03     Trustee and Attorney Compensation .........................................9
Section 6.04     Bond ........................................................................................10
Section 6.05     Hold Harmless .........................................................................10

**Article Seven**     **Miscellaneous Provisions** ............................................ **10**

Section 7.01     Spendthrift Provision ...............................................................10
Section 7.02     Common Disaster Provision .....................................................10
Section 7.03     Miscellaneous Definitions .......................................................10
Section 7.04     Paragraph Headings and Pronouns ..........................................11
Section 7.05     Validity of Provisions ..............................................................11

# John Hernandez Special Needs Trust

## Article One
## Establishing the John Hernandez Special Needs Trust

The effective date of this Irrevocable Trust Agreement ("this agreement") is _____, 2019.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the Trustee agrees to hold the trust income and principal ("Trust Estate" or "Trust Funds"), IN TRUST, for the following uses and purposes and subject to the terms and conditions hereinafter set forth.

Herb Thomas ("Trustmaker") hereby creates this Irrevocable Trust for John Hernandez's benefit as the beneficiary hereunder ("John"), as directed in the Order of the U.S. District Court for the Eastern District of California under which the proceeds of the settlement in favor of John Hernandez in an action entitled *Hernandez v. City of Sacramento*, Case No. 2:17-cv-02311-JAM-DB, are to be placed into this special needs trust.

John is under the age of 65 years and is a disabled person as defined in Section 1382c(a)(3)(A) of Title 42 of the United States Code. This Irrevocable Trust is to enable John to qualify for (i) the Supplemental Security Income ("SSI") Program; (ii) medical assistance under the Medicaid program as provided for by Section 1396p(d)(4)(A) of Title 42 of the United States Code as enacted by the Omnibus Budget Reconciliation Act of 1993 ("OBRA 1993"); or (iii) any other governmental program.

This Irrevocable Trust is established with John's assets and John is the sole beneficiary of the trust.

Trustmaker enters into this Irrevocable Trust Agreement with Herb Thomas (the "Trustee") as Trustee.

### Section 1.01     Identifying the Trust

The trust is called the "John Hernandez Special Needs Trust." The following format should be used for taking title to assets: "Herb Thomas, Trustee of the John Hernandez Special Needs Trust, dated _____, 2019."

### Section 1.02     An Irrevocable Trust

This trust is irrevocable, and John may not alter, amend, revoke, or terminate it in any way. No other party, except as otherwise provided herein, may alter, amend, revoke, or terminate it in any way.

### Section 1.03     Transfers to the John Hernandez Special Needs Trust

The initial funding on this trust shall be the proceeds directed to the trust by the court in the matter of *Hernandez v. City of Sacramento,* U.S. District Court for the Eastern District of California, Case No. 2:17-cv-02311-JAM-DB. John retains no right, title, or

interest in the income or principal of this trust, or any other incident of ownership in any trust property. John, his guardian, his agent, or any duly authorized person on John's behalf, may add from time to time to the Trust Estate any property by deed, Will, court order, or otherwise.

By execution of this agreement, the Trustee accepts and agrees to hold the trust property described above. All property transferred to the trust after the date of this agreement must be acceptable to the Trustee. The Trustee may refuse to accept any property. The Trustee will hold, administer, and dispose of all trust property accepted by the Trustee for John's benefit in accordance with the terms of this agreement.

### Section 1.04    Statement of Trustmaker's Intent

Trustmaker is creating this trust as a means by which trust assets may be held for the sole benefit of John Hernandez, on the terms and conditions set forth in this instrument. It is Trustmaker's intent to create a Special Needs Trust that conforms to California law.

This trust is created expressly for John's benefit, to supplement, not supplant, impair, or diminish, any benefits John otherwise receives or may receive from or be funded by any local, state, or federal government, or from any private agency, any of which provides or funds services or benefits to developmentally disabled, incapacitated, or disabled persons, or from any private insurance carriers covering John.

It is Trustmaker's intent that the funding and administration of this trust will not subject John to a period of ineligibility under Medicaid law pursuant to 42 U.S.C. section 1396p(d)(4)(A) and California law.

It is also intended that this trust will be treated as a grantor type trust for federal and state income tax purposes and that the funding of the trust will not be subject to federal and state gift taxation.

The Trustee must interpret all provisions of this trust to best effectuate these purposes and intentions.

# Article Two
# Distributions During John's Lifetime

The Trustee will hold, manage, invest, and reinvest the Trust Estate, and will pay or apply the income and principal of the Trust Estate in the following manner:

### Section 2.01    Distributions of Income and Principal

During John's lifetime, the Trustee will pay from time to time such amounts from the Trust Funds for the satisfaction and benefit of John's Special Needs (as hereinafter defined), as the Trustee determines in the Trustee's sole and absolute discretion, as hereinafter provided. Under no circumstances may the Trustee distribute Trust Funds directly to John. Any income of the trust not distributed will be added annually to the principal of the trust.

2

### Section 2.02    Maximize Benefits

The Trustee is encouraged to seek support and maintenance for John from all available public resources, including, but not limited to, SSI, the Supplemental Income Program ("SIP") of any applicable state, the Old Age Survivor and Disability Insurance Program ("OASDI"), the Medicare program, the Medicaid program, and any additional, similar, or successor programs for which John is or may in the future be eligible.

### Section 2.03    Duty to Supplement and Not Supplant Government Benefits

Except as provided in Section 2.05 below, the Trustee may not expend Trust Funds for any property, services, benefits, or medical care otherwise available from any local, state, or federal governmental source, or from any private agency, any of which provides or funds services or benefits to developmentally disabled, incapacitated, or disabled persons, or from any private insurance carriers covering John.

Also, except as provided in Section 2.05 below, under no circumstances may the Trustee exercise discretion to utilize Trust Funds for the payment of items or services that would otherwise be borne by any publicly funded program, including, but not limited to, Social Security Administration, Veterans Administration, Medicaid, and SSI or Public Assistance Programs.

### Section 2.04    No Court Invasion of Income or Principal

Neither John nor anyone acting on his behalf may seek court-directed invasion of Trust Funds pursuant to any provision of federal, state, or local law.

The laws of the State of California or any other state or jurisdiction are not available to require any invasion of Trust Funds by the Trustee or any court.

In the event the Trustee is requested by any department or agency of federal, state, or local government to release principal or income of the trust to or on John's behalf to pay for equipment, medication, or services that any department, agency, or organization is authorized to provide, or in the event the Trustee is requested by any department or agency administering such benefits to petition the court or an administrative agency for the release of Trust Funds for this purpose, the Trustee must deny such request and is directed to obtain legal counsel to defend, as an expense of the trust, any contest of this provision or any other legal challenge to the trust of any nature. The Trustee has sole and absolute discretion with regard to the defense of any such claim, including the management of all litigation that may result.

### Section 2.05    Discretionary Distributions

Notwithstanding the above provisions, the Trustee may make distributions to meet John's need for food, shelter, health care, or other personal needs, even if those distributions will impair or diminish John's receipt or eligibility for government benefits or assistance only if the Trustee determines that the distributions will better meet John's needs, and it is in John's best interests, notwithstanding the consequent effect on John's eligibility for, or receipt of, benefits.

3

However, if the mere existence of the Trustee's authority to make distributions pursuant to this Section 2.05 results in John's loss of government benefits or assistance, regardless of whether such authority is actually exercised, this Section 2.05 will be null and void and the Trustee's authority to make such distributions will cease and be limited as provided in the other provisions of this Article Two, without exception.

## Section 2.06    Qualified ABLE Account Contributions

The Trustee may contribute to a qualified ABLE account under Section 529A of the Internal Revenue Code on John's behalf. All such contributions must be made in cash and may not cause the annual aggregate contribution limit (from all contributors) imposed by Section 529A(b)(2)(B) to be exceeded, and may not cause the aggregate excess contribution limit imposed by Section 529A(b)(6) to be exceeded.

However, if the mere existence of the Trustee's authority to make contributions to an ABLE account pursuant to this Section 2.06 results in John's loss of government benefits or assistance, regardless of whether such authority is actually exercised, this Section 2.06 will be null and void and the Trustee's authority to make such contributions will cease, without exception.

The Trustee will be held harmless from any liability that may occur as a result of contributing to an ABLE account pursuant to this Section 2.06.

## Section 2.07    Administrative Expenses

The Trustee may use Trust Funds to pay for any and all expenses necessary for the proper administration of the trust.

# Article Three
# Early Termination Provisions

The provisions of this Article govern Early Terminations as defined below and in the Social Security Administration's Program Operations Manual System ("SSA POMS") Section SI 01120.199. Under no circumstances may John have the power to cause an Early Termination.

## Section 3.01    Definition of Early Termination

The term "Early Termination" means a provision or clause that would allow a trust to terminate before the death of the beneficiary (John), as provided in SSA POMS Section SI 01120.199, as amended.

## Section 3.02    Early Termination if Eligibility Terminates

The Trustee, in the Trustee's sole and absolute discretion, may terminate the trust if John's eligibility for either Supplemental Security Income or Medi-Cal is terminated.

### Section 3.03     Early Termination if Insufficient Assets

The Trustee, in the Trustee's sole and absolute discretion, may terminate the trust if the trust assets have been reduced to the point that continued administration is not financially justified.

### Section 3.04     Disposition of Trust Assets Upon Early Termination

In the event of an Early Termination, the Trustee will dispose of the trust assets as follows:

   (i)    first, the Trustee may pay the expenses allowed in SSA POMS Section SI 01120.199F.3, as amended, which are specified in Section 3.05, entitled "Allowable Administrative Expenses Paid from the Trust," below;

   (ii)   second, the Trustee must reimburse the state as provided in Section 4.02, entitled "Reimbursement to State," below; and

   (iii)  finally, the Trustee must disburse all remaining trust assets to John outright.

No entity may benefit from the Early Termination, other than payment of expenses in accordance with SSA POMS Section SI 01120.199F.3, as amended, which are specified in Section 3.05, entitled "Allowable Administrative Expenses Paid from the Trust," below.

### Section 3.05     Allowable Administrative Expenses Paid from the Trust

In the event of an Early Termination, the following types of administrative expenses may be paid from the trust prior to reimbursement of medical assistance to California (or any other state):

   (i)    taxes due from the trust to California (or any other state) or the federal government due to the termination of the trust; and

   (ii)   reasonable fees and administrative expenses associated with the termination of the trust.

For example, payment for an accounting of the trust to a court, completion and filing of documents, or other required actions associated with termination and wrapping up of the trust.

### Section 3.06     Savings Clause

In the event that the mere existence of a provision giving the Trustee discretion to terminate the Trust and make distributions would result in a reduction or loss of John's entitlement program benefits, regardless of whether the Trustee actually exercises the discretion, then such provision will be null and void, *ab initio*.

5

# Article Four
# Administration of the John Hernandez Special Needs Trust Upon John's Death

Upon John's death, the Trustee must promptly obtain an accounting from the states (or local Medicaid agencies of the states) that have made Medicaid payments on John's behalf during his lifetime.

Upon receipt of such accounting, the Trustee will distribute all of the trust property as follows:

(i) first, the Trustee may pay the expenses allowed in SSA POMS Section SI 01120.203B.3, as amended, which are specified in Section 4.01, entitled "Allowable Administrative Expenses," below;

(ii) second, the Trustee must reimburse the state as provided in Section 4.02, entitled "Reimbursement to State," below;

(iii) third, the Trustee may pay the expenses specified in Section 4.03, entitled "Payment of Expenses and Taxes," below; and

(iv) finally, the Trustee will distribute the remainder of the trust property as specified in Section 4.04, entitled "Distribution of Remaining Trust Property," below.

## Section 4.01    Allowable Administrative Expenses

The following types of administrative expenses may be paid from the trust prior to reimbursement of medical assistance to California (or any other state):

(i) taxes due from the trust to California (or any other state) or the federal government because of the death of the beneficiary (John); and

(ii) reasonable fees for administration of the trust estate such as an accounting of the trust to a court, completion and filing of documents, or other required actions associated with termination and wrapping up of the trust.

## Section 4.02    Reimbursement to State

The Trustee must pay to the states (or local Medicaid agencies of the states) that have made Medicaid payments on John's behalf during his lifetime, the lesser of:

(i) the total amount of Medicaid payments made on John's behalf to the extent required by law; and

(ii) the entire balance of the Trust Estate, with each state getting a pro rata share equal to the state's Medicaid payments made on John's behalf over the total of all states' Medicaid payments made on John's behalf.

6

## Section 4.03     Payment of Expenses and Taxes

Upon full reimbursement to the states (or local Medicaid agencies of the states) as provided in Section 4.02, the Trustee, in the Trustee's sole and absolute discretion, may pay directly or indirectly from the Trust Estate, if any:

    (i) John's funeral expenses;

    (ii) any and all death taxes imposed on John's estate;

    (iii) court fees of probate, administration, or estate proceedings related to John's estate; and

    (iv) any and all legal and accounting fees related to John's estate.

## Section 4.04     Distribution of Remaining Trust Property

Subject to the provisions of Section 4.02, entitled "Reimbursement to State," the Trustee will distribute the remaining trust property to John's heirs at law.

# Article Five
# Powers and Duties of Trustee

### Section 5.01     Investment Powers

The Trustee (including any Successor Trustee) has the continuing, absolute, and discretionary power to deal with any property, real or personal, held in the trust. The Trustee shall have the power to invest trust funds, without authorization of the court, as set forth in California Probate Code § 2574.

Nothing in this section limits the authority of the Trustee to seek court authorization for any investment, or to make other investments with court authorization.

### Section 5.02     Power to Seek Assistance and Retain Advisors

The Trustee may seek and retain the services of social workers, consultants, or other individuals or agencies, public or private, skilled in the identification and provision of services for disabled, handicapped, or mentally ill individuals. Further, the Trustee may seek and utilize or reject, in the Trustee's sole and absolute discretion, the counsel and assistance of John's physician or guardian, if any, and any state or local agency that has been established to assist the handicapped or mentally disabled, and similar resources.

The Trustee may use these resources to aid John's guardian, if any, in identifying programs that may be of social, financial, developmental, or other assistance to John.

The Trustee may not be held liable to John, the remainder beneficiaries, or any other party for seeking or not seeking counsel and recommendations of any expert, whether or not expressly named and authorized herein, or for accepting or rejecting all or part of the counsel and recommendations offered by any such expert. Nor may the Trustee be held

7

liable for actions taken hereunder, except for damages resulting from the Trustee's own gross negligence, willful neglect, or unlawful act.

## Section 5.03    Power to Retain Services Provided by Professionals

The Trustee may retain and pay for attorneys, accountants, financial planners, social workers, health care professionals, and any other professional required for John's benefit in the sole and absolute discretion of the Trustee, subject to the limitations set forth in this trust. However, any fees paid to the attorney for the Trustee must be approved by the court before payment may be made.

The Trustee is authorized, without notice to or consent by any beneficiary or court, to engage any corporation, partnership, limited liability company or other entity that is a subsidiary or affiliate of the Corporate Trustee serving hereunder and/or any individual who is a partner, director, member, manager, officer or employee of any such subsidiary or affiliate (individually and collectively, an "Affiliate"), to act as agent of or render services to the trust, to delegate discretionary authority to any Affiliate or other agent and to pay customary fees and compensation to such Affiliate or agent without reduction of any compensation paid to the Trustee. Without limiting the generality of the foregoing, the Trustee, and any Affiliate appointed by the Trustee, is hereby authorized: (i)  To appoint one or more Affiliates to manage in its or their sole discretion the investment of all or any portion of the trust's assets or to provide nondiscretionary investment advice; (ii)  To appoint one or more Affiliates to act as custodian of all or any portion of the trust's assets and, in connection therewith, to cause such assets to be held in any jurisdiction by or in the name of any nominee of the Trustee or an Affiliate; (iii)  To engage one or more Affiliates to provide trust administration or recordkeeping services for the trust; (iv)  To use, engage or hire any Affiliates as broker, dealer, principal or agent in the purchase or sale of stocks, bonds or other securities or property for the account of the trust; (v)  To purchase from or sell to any Affiliate any stock, bonds or other securities or property and to engage in agency cross transactions with any Affiliate, in each case at such price and upon such terms as the Trustee and such Affiliate may deem advisable; (vi)  To invest any funds in the trust in any stocks, bonds, or other securities or property, real or personal, or whatsoever kind or nature, which may be distributed, underwritten, managed or issued by or through an Affiliate, and from which an Affiliate may receive fees or other compensation; (vii)  To make any investment or enter into any transaction which may directly or indirectly benefit any Affiliate or in which any Affiliate has an interest; and (viii)  To grant proxies to any Affiliate or to exercise any voting or consent rights pertaining to any securities or other property held in the trust in a manner which may directly or indirectly benefit or advance the interests of any Affiliate.

## Section 5.04    Duty to Account and Report

Unless waived by the Court, the Trustee shall file a periodic Account and Report for court approval in compliance with the procedures and schedule set forth in the California Probate Code.

### Section 5.05    Duty to Make Records Available

The Trustee must make the Trustee records, along with all trust documentation, available for inspection by John, his legal representative, or any trust remainderman, during regular business hours upon 5 calendar days' prior written notice to the Trustee.

# Article Six
# Trustee Provisions

### Section 6.01    Appointment and Replacement of Trustees

Trustees are appointed, removed, and replaced as provided in this Section.

#### (a)    Trustee Succession

Trustmaker appoints Herb Thomas to serve as Trustee of the trust.

#### (b)    Trustee Replacement

If a Trustee becomes unable or unwilling to serve for any reason, then a successor Trustee shall be appointed by the Court upon petition of any interested party.

#### (c)    John May Not Serve as Trustee

Notwithstanding any other provision of this trust, under no circumstances may John serve as Trustee.

### Section 6.02    Resignation of Trustees

A Trustee may resign by giving written notice in a signed and acknowledged instrument, delivered by certified mail, return receipt requested, to:

- (i)   John;
- (ii)  John's guardian, if any; and
- (iii) any other then serving Trustee.

The Trustee's resignation is subject to confirmation of a court of competent jurisdiction, and the Trustee may not be discharged and released from office and bond, except upon filing a final accounting with the court, in the form and manner required by California law.

### Section 6.03    Trustee and Attorney Compensation

The Trustee and Attorney for the Trustee shall be entitled to just and reasonable compensation for the services it renders.  The amount of compensation shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale, and shall be subject to Court review and approval at the time of accounting.

9

Notwithstanding the foregoing, whenever a Corporate Trustee is serving as Trustee of this trust, the compensation for a Corporate Trustee shall be in accordance with the Corporate Trustee's published fee schedule at the time of payment for the administration of similar trusts in the state of administration of the trust. Such compensation shall not be reduced by any compensation received by the Trustee or its Affiliates for providing any of the additional services authorized herein. It is specifically understood that such compensation may exceed the compensation for such services in effect from time to time under applicable law. The compensation of a Corporate Trustee shall be subject to Court review and prospective adjustment at the time of accounting.

### Section 6.04     Bond

No Trustee shall have authority to act without a court order fixing bond for that person or entity in the amount required by Probate Code §2320, et seq.. A bond shall not be required if the trustee then serving is a trust company pursuant to Probate Code § 15602(e).

### Section 6.05     Hold Harmless

No Trustee may be held liable for any damages, whether monetary or otherwise, arising from any act, omission, or forbearance by the Trustee, except for damages resulting from the Trustee's own gross negligence, willful neglect, or unlawful act.

# Article Seven
# Miscellaneous Provisions

### Section 7.01     Spendthrift Provision

No interest in the Trust Estate may be anticipated, assigned, or encumbered, or be subject to any creditor's claim or to legal process, prior to its actual receipt by John. Furthermore, it is the intent of the trust as expressed herein, that because this trust is to be conserved and maintained primarily for John's special needs, no part of the Trust Estate may be subject to the claims of John's voluntary or involuntary creditors during his life or after his death, except as otherwise provided herein.

### Section 7.02     Common Disaster Provision

If any beneficiary dies simultaneously with John, or in such circumstances that there is not sufficient evidence to determine the order of the deaths, then it will be presumed that John survived such beneficiary and the provisions of this trust will be construed on that assumption, unless otherwise provided herein.

### Section 7.03     Miscellaneous Definitions

#### (a)     Descendants

The term "descendants" means lineal descendants of all generations.

10

### (b)     Per Stirpes

Whenever a distribution is to be made to a person's descendants "per stirpes," the distribution will be divided into as many equal shares as there are then-living children of the person and deceased children of the person who left then-living descendants. Each then-living child will receive one share and the share of each deceased child will be divided among such child's descendants in the same manner.

### (c)     Special Needs

The term "special needs" means John's needs that are not covered or available from any local, state, or federal government, or any private agency, or any private insurance carrier covering John.

### Section 7.04     Paragraph Headings and Pronouns

The paragraph headings used are for convenience only and may not be resorted to for interpretation of this trust. Whenever the context so requires, the masculine includes the feminine or neuter, and vice versa, and the singular includes the plural, and vice versa.

### Section 7.05     Validity of Provisions

If any portion of this trust is held to be void or unenforceable, the balance of this trust will nevertheless be carried into effect.

## Trustmaker and Trustee

Trustmaker hereby executes this agreement at the direction of the Court on _____, 2019. Trustmaker certifies that he has read this agreement, that he understands it, and that it correctly states the provisions under which the trust property is to be administered and distributed by the Trustee. The undersigned further consents to serve as Trustee.

_____

**Herb Thomas, Trustmaker and Trustee**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of _____   )

On _____, 2019, before me, _____, a Notary Public, (here insert name and title of the officer), personally appeared Herb Thomas, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.


WITNESS my hand and official seal.


Signature       _____          (Seal)

12